bKUHN, Judge.
This appeal involves a dispute regarding the compensation to be paid to the co-executors of the estate of Solomon A. Acy. In the proceedings below, the co-executors, Alvin D. Miller and Donald Ray Featherston, each sought compensation in the amount of two and one-half percent of the value of the gross estate. The residuary legatee of the estate, The Louisiana Chapter of the Arthritis Foundation (“the Foundation”), intervened at the trial level to contest the petition of Miller and Featherston seeking the increased compensation. The Foundation contends that compensation totaling two and one-half percent of the value of the gross estate should be apportioned among the co-executors.
The trial court signed a judgment ordering the co-executors “are entitled to be and shall be paid a commission of 2-1/2% each for a total of 5% of the gross estate under administration in this matter.” We reverse and dismiss plaintiffs’ petition to increase compensation.
I. FACTS AND PROCEDURAL BACKGROUND
Solomon A. Acy executed a statutory will, dated October 30, 1995, in which he named Miller and Featherston as the co-executors of his estate and as co-trustees of a testamentary scholarship trust. The will does not contain any provisions addressing compensation for the co-executors. Property and/or cash was bequeathed to several legatees named in the will, including Miller and Featherston. The Foundation was named as the residuary legatee. Acy died on October 31,1995.
Miller and Featherston filed a petition for probate, registry and execution of the will and for confirmation as testamentary co-executors, along with a copy of the testament and an affidavit of death and heirship. On November, 13, 1995, the trial court ordered Acy’s testament to have been duly proved and confirmed Miller and Featherston as testamentary co-executors of the succession.
|3On December 1, 1995, Miller and Feath-erston, in their capacity as co-executors of the succession, petitioned the court and obtained authority to appoint a notary public to open and inventory a bank safety deposit box for the purpose of removing documents which might facilitate the administration of the Acy estate. On May 10, 1996, the co-executors petitioned the court and obtained authority to sell a 1984 Dodge van. On July *343 26, 1996, the trial court granted an extension of time in which to file a Louisiana tax return and to pay taxes.
On September 5,1996, Miller and Feather-ston filed a petition to increase compensation of testamentary co-executors, which states, in pertinent part, as follows:
1.
The last will and testament of the decedent ... does not provide a specific percentage or dollar amount as compensation for the services rendered by the testamentary co-executors.
2.
Code of Civil Procedure Article 3351 provides in relevant part as follows:
“In the absence of a provision in the testament or an agreement between the parties, the administrator or executor shall be allowed a sum equal to two and one-half percent of the amount of the inventory as compensation for his services in administering the succession. The court may increase the compensation upon a proper showing that the usual commission is inadequate.”
3.
Code of Civil Procedure Article 3352 provides:
“If there is more than one succession representative, the compensation provided by Article 3351 shall be apportioned among them as the court shall direct.”
4.
Petitioners respectfully show that the compensation due to them as the testamentary co-executors should be increased to a sum equal to two and one-half percent each for the following reason: Prior to his death, and even prior to the death of his spouse who predeceased him, the testator and his said spouse discussed with Upetitioners the fact that they would each be entitled to a sum equal to two and one-half percent and the failure of the testator to so specify in the will was simply due to a mistake on his part as to the relevant provisions of the law.
5.
The compensation due to petitioners as testamentary co-executors should therefore be increased to a sum equal to two and one-half percent of the gross amount of the estate in accordance with the express wishes of the testator although not set forth in the will.
The sworn, detailed descriptive list submitted to the court by Miller and Featherston sets forth the value of Mr. Acy’s estate as $1,928,271.47. Miller and Featherston each claim two and one-half percent of this figure, or approximately $48,206.78 each in compensation for their services as executor.[1]
During the hearing regarding the request for increased compensation, both Miller and Featherston testified that they had been individually informed by Mr. Acy’s wife, Emma Acy, that they would receive two and one-half percent compensation for their services as executor of Mr. Acy’s estate.[2] Feather-ston testified that during 1988, he was contacted by Mrs. Acy and he met with Mr. and Mrs. Acy to discuss his appointment as an executor of the estate. Miller testified he was approached around 1990 by Mrs. Acy regarding his appointment as an executor. Miller explained that Mrs. Acy handled Mr. Acy’s affairs because he suffered from Parkinson’s disease and was not capable of handling his affairs. Featherston testified that Mr. Acy was present when Emma told Featherston he would receive two and one-half percent compensation for his services as executor. Miller testified that Mr. Acy was in another room of the Acy’s home when Mrs. Acy |5informed him he would earn two and one-half percent compensation for his *344 services as executor. The record establishes Mrs. Acy predeceased Mr. Acy.
At the end of the hearing, the trial judge made the following pertinent comments:
... Well, this is a very difficult case. It is always difficult when there is [sic] differences between what a Testator wants to • say and what the attorney actually puts in a Will when the Testator leaves his final testament.... I think the Court’s goal should aways [sic] be to try to do what the testator wanted in a Will....
... I think it is clear that the Testator in this case wanted that both Mr. Miller and Mr. Featherston to each receive two and a half percent (2 1/2%) compensation for being Executors of the Estate. Whether that is a wise decision or a poor decision or a foolish decision on behalf of Mr. Acy, it is not for this Court to determine. I think all the.Court should try to determine is what Mr. Acy wanted. And if his intent was to leave and to allow Mr. Featherston and Mr. Miller each to get two and a half percent (2 1/2%), the Court feels that that should be its obligation and to rule accordingly. So, it is the judgment of the Court that the Will is at' least ambiguous in its silence and that it does not state what amount should be paid to the executors in this case. And due to that fact, the Court is going to follow the Secession of Burnside [ 35 La.Ann. 708 (1883) ] and rule that the Testator’s intent was that each Mr. Featherston and Mr. Miller were to each receive two and a half percent (2 1/2%) compensation....
In accordance with these oral reasons, the trial court signed a judgment ordering that the co-executors “are entitled to be and shall be paid a commission of 2-1/2% each for a total of 5% of the gross estate under administration in this matter.” The Foundation has appealed urging that the co-executors are only entitled to share compensation in the amount of two and one-half percent of the testator’s gross estate.
II. ANALYSIS
As set forth in the petition, La. C.C.P. art. 3351 provides in pertinent part that “[a]n executor shall be allowed as compensation for his services such reasonable amount as is provided in the testament in which he is appointed” and that “[i]n the absence of a provision in the testament or an agreement between the parties, the ... executor shall be allowed a sum equal to two and one-half percent of |6the amount of the inventory as compensation for his services in administering the succession.” Additionally, La. C.C.P. 3351 provides that the court may increase the compensation upon a proper showing that the usual commission is inadequate. La. C.C.P. art. 3352 sets forth that when there is more than one succession representative, the compensation provided by Article 3351 shall be apportioned among them as directed by the court.
Miller and Featherston assert the trial court has considerable discretion in fixing the commission of the succession representative and contend they are each entitled to a fee equal to two and one-half percent of the gross estate based on the following reasoning:
... it was the intention of the testator to so provide; he had promised them a commission of 2-1/2% each; and his failure to specifically set forth such a declaration in his last will and testament resulted from the fact that he was of the mistaken belief that the law provided a commission of 2-1/2% for each testamentary co-executor.
Miller and Featherston cite La. C.C. arts. 1712[3] and 1715 [4], contending the trial court’s principal endeavor should be to ascertain the intention of the testator. Since the testament is silent on the question of the compensation to be paid to them, they assert there is no way of determining the testator’s inten *345 tion from the will alone and that the trial court properly admitted “testimonial proof’ regarding this issue.
The pertinent provision of the testament addressing the appointment of the executors states:
I appoint Alvin D. Miller and Donald Ray Featherston as co-executors, or in the event of the prior death or inability of one to 17serve, then the survivor as executor, of this my last will and testament with full seizin of my estate. I dispense each of said co-executors from the necessity of furnishing bond.
The intent of the testator is the paramount consideration in determining the provisions of a will. La. C.C. art. 1712. When a will is free from ambiguity, the will must be carried out according to its written terms, without reference to information outside the will. Succession of Williams, 608 So.2d 978, 975 (La.1992). However, when a provision in a will is subject to more than one equally reasonable interpretation, then the court may consider all circumstances existing at the time of the execution of the will (and not just the language of the will) which may aid in determining the intent of the testator. La. C.C. art. 1715; Succession of Williams, 608 So.2d at 975. It is presumed that an attorney knows the law and has clearly expressed the testator’s intent in drafting the will. Succession of Jones, 172 So.2d 312, 316 (La.App. 4th Cir.); writ refused, 247 La. 718, 174 So.2d 131 (1965).[5] Testamentary dispositions cannot be established by any amount of parole evidence as to the verbally declared intentions of the deceased. Succession of Merritt, 581 So.2d 728, 730 (La.App. 1st Cir.), writ denied, 584 So.2d 1165 (La.1991).
The trial court relied on Succession of Burnside, 35 La.Ann. 708 (1883), in support of its ruling. In Burnside, the court considered a will in which the testator bequeathed the residue of his property “of every description” to a certain legatee. The Burnside court addressed the provision of La. C.C. art. 1712 and concluded that, based on the language of the will, the testator intended to bequeath to the residuary legatee not only the property which he owned at the time of the execution of the will, but any property which he might acquire in the future. While Burnside | «generally supports the proposition that the cardinal rule of testamentary interpretation is to ascertain the intent of the testator, we do not find that it lends support for petitioners’ suggestion that parole evidence should be considered to determine the testator’s intent in the absence of ambiguous language in the will.
The provision of the will addressing the appointment of the co-executors is not ambiguous but rather is silent regarding the amount of compensation to be paid the co-executors. Thus, we find the testimony of Miller and Featherston regarding conversations with Mrs. Acy should not be considered in determining the compensation to be paid to the co-executors.[6] In the absence of such an ambiguity, the trial court should have applied La. C.C.P. arts. 3351 and 3352 to determine the appropriate amount of compensation. Since Mr. Acy did not dictate an amount of compensation to be paid, the co-executors should not be allowed a combined commission in excess of two and one-half percent of the inventory unless the co-executors show this compensation is inadequate.
At the time of the November 19,1996 hearing, the succession had been under administration for a little over one year. Featherston testified that during this time, he and Miller had: 1) taken care of various items of correspondence pertaining to various stock transfers; 2) engaged in various banking transactions; 3) attended numerous meetings with a certified public accountant and with the estate’s attorney; 4) obtained appraisals for estate properties; 5) sold a van; and 6) collected payments on a note. *346 When Featherston was asked to quantify how much time he had spent each week handling these matters, he responded that he did not know and that he had not maintained a log of his time. Featherston stated that Miller spent more time than he spent in administering the succession because Miller handled the monetary issues. Miller testified he had been involved in primarily the same type of functions Ras Featherston. He estimated he had spent an average of about four hours a week handling the succession administration.
We classify the services provided by Miller and Featherston to be the normal services and responsibilities ordinarily performed by an executor. Considering the amount of time the succession had been under administration and because the testimony does not establish that Miller and Featherston spent an excessive amount of time engaged in the administration of the succession, we find the co-executors failed to make a “proper showing that the usual commission is inadequate.” Accordingly, we conclude the trial court abused its discretion in setting Miller and Featherston’s compensation in excess of two and one-half percent of the inventory value.
III. CONCLUSION
For the above reasons, we reverse the December 5, 1996 judgment of the trial court, which ordered that “the testamentary co-executors, Alvin D. Miller and Donald Ray Featherston, are entitled to and shall be paid a commission of 2-1/2% each for a total of 5% of the gross estate under administration in this matter” and we dismiss the Petition to Increase Compensation of Testamentary Co-Executors. All costs are to be paid by petitioners-appellees, Alvin D. Miller and Donald Ray Featherston.
REVERSED.

. Acy’s will also named Miller and Featherston as co-trustees of a trust established pursuant to the will.

. Miller and Featherston were related to Solomon Acy by marriage. Both Miller and Feath-erston testified that Mrs. Acy was their aunt. During their testimony, Miller and Featherston referred to Mr. and Mrs. Acy as Uncle Sol and Aunt Emma.

. La. C.C. art. 1712 provides:
In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.

. La. C.C. art. 1715 provides:
When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.

. During the hearing, counsel for the co-executors stated:
I wish I could call Ms. Miriam Attaya, the attorney who confected the Will to start with, to find out what she had told them and what [the Acys] had understood. But, unfortunately, all these people are dead.

. Even if we were to consider the testimony of Miller and Featherston, we would find that while it may establish Mrs. Acy's intent, it does not establish Mr. Acy’s intent to compensate each co-executor at the rate of two and one-half percent.