1CARAWAY, J.
In this case, two children, excluded from their father’s will, seek application of La. R.S. 9:2501 for an interpretation of the 1991 testament which would provide them with rights as forced heirs. Since the testator died after the 1995 changes to the law of forced heirship, the trial court ruled that plaintiffs were not forced heirs and dismissed their claims. Finding that La. R.S. 9:2501(B) is inapplicable for the construction and interpretation of the testament, we. affirm the trial court’s ruling.

Facts

Joseph Page Boyter (“Mr. Boyter”) died on January 28, 1997 in Caddo Parish. Mr. Boyter was first married to Wilma Frances McKinney Boyter, who predeceased him in 1936 and then to Elizabeth Lorene Lawson Boyter, from whom he divorced in 1992. He had one child from his first marriage, who predeceased him in 1936. Four children were born of the second marriage: James Leslie Boyter (“James”), born in 1946; Frances Darlene Boyter Wells (“Frances”), born in 1948; Michael Page Boyter (“Michael”), born in 1949; and Jerry Wayne Boyter (“Jerry”), bom in 1954, all of whom survive Mr. Boyter.
Mr. Boyter executed his last will and testament on December 30, 1991. In his will, he named his son, James, executor, made several particular legacies, and disposed of the remainder of his estate to his sons, James and Jerry. Mr. Boyter made no bequests to Michael or to Frances.
Following Mr. Boyter’s death, James opened the succession by probating the statutory testament and being confirmed as testamentary executor. Then, on June 18,1997, Michael and Frances (hereinafter “plaintiffs”) filed a petition to reduce donation mor-tis causa to disposable portion, to collate donations inter vivos and donations mortis causa, and to be recognized as owners of one-fourth interest each of the real estate and fictitious mass of the estate of Joseph Page feBoyter. James and Jerry were named as defendants. The petition, which asserted plaintiffs’ rights as forced heirs and the application of La. R.S. 9:2501, alleged no facts bearing upon Mr. Boyter’s testamentary intentions apart from the language of the will itself.
The petition was met with peremptory exceptions of no right of action and no cause of *687 action. On September 15,1997, in a hearing on the exceptions in district court, the testimony of Professor Max Nathan was presented, over the objection of the plaintiffs, concerning the changes to Louisiana’s forced heirship law and La. R.S. 9:2501. The hearing was continued until December 2, 1997, at which time the plaintiffs presented rebuttal testimony from Professor Katherine Spaht and a former state senator involved in the enactment of the legislation on forced heir-ship.
On February 3, 1998, the district court issued a ruling in favor of the defendants granting their peremptory exceptions. The district court stated, “the plaintiffs are not forced heirs ... they cannot demand collation, reduction or recognition in connection with Mr. Boyter’s succession.” It is the court’s dismissal of the ease and admission of Professor Max Nathan’s testimony from which the plaintiffs base this appeal.

Legislative History of Section 2501

In 1990 by Act 147, the legislature, without proposing a constitutional amendment, attempted to eliminate forced heirship for children over the age of twenty-three.[1] In that legislation, a transitional provision concerning testaments, La. R.S. 9:2501 (hereinafter “Section 2501”), was enacted as a part of Act 147.[2] In b!993, in Succession of Langa, 624 So.2d 1156 (La.1993), Act 147 of 1990 was declared unconstitutional in its entirety by the Louisiana Supreme Court. Following the Lauga ruling, however, the legislature responded again with Act 1180 of 1995 which was in most respects a re-enactment of Act 147 of 1990. One notable change, however, was the proposed amendment to Art. XII, Section 5 of the constitution which would provide as follows:
Section 5. (A) The legislature shall provide by law for uniform procedures and successions and for the rights of heirs or legatees and for testate and intestate succession. Except as provided in Paragraph B of this Section, forced heirship is abolished in this state.
(B) The legislature shall provide for the classification of descendants, of the first degree, twenty-three years of age or younger as forced heirs. The legislature may also classify as forced heirs descendants of any age who, because of mental incapacity or physical infirmity, are incapable of taking care of their persons or administering their estates. The amount of the forced portion reserved to heirs and the grounds for disinhersion shall also be provided by law. Trusts may be authorized by law and the forced portion may be placed in trust.
The constitutional amendment was passed by the vote of the people in October 1995 and became effective on November 23,1995.
As a result of the 1995 legislation and Act 77 of 1996, Section 2501 was re-enacted and amended and in 1997, at the time of the death of Mr. Boyter, Section 2501 provided as follows:
A. The provisions of Act No. 1180 of the 1995 Regular Session as provided therein became effective on January 1, 1996, and shall apply to the successions of all persons who die after December 31, 1995.
B. If the person dies testate, and the testament is executed before January i, 1996, then the testator’s intent shall be ascertained according to the following rules:
(1) That the testament shall be governed by the law in- effect at the time of the testator’s death in any of the following instances:
It (a) When the testament manifests an intent to disinherit a forced heir or to restrict a forced heir to the legitime under the law in effect at the time of the testator’s death.
(b) When the testament leaves to the forced heir an amount less than the legi- *688 time under the law in effect at the time of the testament is executed.
(c) When the testament omits a force heir and the language of the testament indicates an intent to restrict the forced heir to an amount less than the legitime under the law in effect at the time the testament is executed.
(2) That in all other instances the. testament shall be governed by the law in effect on December 31,1995.
(3) That the term forced heir, as used above, shall mean a forced heir at the time the testament is executed.
From this statute, the plaintiffs now assert the substantive rights of reduction and collation as forced heirs of Mr. Boyter’s succession.

Discussion

Substantive rights of inheritance are determined by the applicable substantive law in effect on the date of death of the decedent. Succession of Landry, 460 So.2d 29 (La.App. 1st Cir.1984). Thus, the forced heir’s right to reduce a legacy that impinges upon the legitime is governed by the substantive laws concerning forced heirship that are in effect on the date of death of the decedent.
The statute now in dispute appears at first glance to both affirm the above rule and then to abruptly change the rule for certain testamentary successions. At the time of Mr. Boyter’s death in 1997, subsection A of Section 2501 reflected the above stated general principle by providing that the successions of persons dying after December 31,1995 would be governed by the new laws regarding forced heirship which resulted from the 1995 amendment to the constitution and Act 1180 of 1995. Nevertheless, plaintiffs assert that subsection B of Section 2501 alters [this very basic rule of succession law providing them with the substantive rights of reduction and collation which existed prior to the 1995 changes.[3]
The 1996 revision comment for Section 2501, however, suggests that subsection B is not a substantive provision of our succession law for the granting of rights to forced heirs but is a transitional provision to aid in the interpretation of testaments. The comment states:
(b) Subsection B deals only with transitional provisions for the construction or interpretation of testaments that are executed before January 1, 1996, where the testator dies after the new law becomes effective. Act 1880 of 1995 also contained transitional rules for the interpretation of such testaments. (Emphasis supplied)
Under this view of the law, with which we agree, plaintiffs have no rights as forced heirs in Mr. Boyter’s 1997 succession by virtue of subsection B. Subsection A of Section 2501 and La. C.C. art. 1493, as revised, govern this succession, and plaintiffs may prevail only if Mr. Boyter’s will can be construed as having an intent to grant them legacies.
Because of the sea change in the law of successions which was initially attempted to be brought about by the legislation of 1990, Section 2501 was first enacted to address certain interpretation problems that might arise from a will confected before July 1, 1990. For such will, the testator’s intent as reflected in any language in the will dealing with a forced heir might become subject to dispute after July 1, 1990 upon death, because of the drastic change in the law of forced heirship which the 1990 legislation first attempted to bring about. Questions could arise depending upon the language used in the will. Did the testator intend to leave fethe forced heir the least share of his estate legally possible, even nothing at all? Or was there intent to give the forced heir a specific share? Did the testator contemplate a legacy in terms of the law for forced heir- *689 ship in existence at the time of the will, or after the change of law on forced heirship, did the testator intend that the reference to a forced portion be viewed in light of the law at death? This transitional law as originally enacted provided rules for interpretation for any such doubtful provisions in pre-July 1990 wills.
A case which puts Section 2501(B) into its proper perspective arose interestingly in 1992, after the initial enactment of Section 2501. In Succession of Williams, 608 So.2d 973 (La.1992), our supreme court addressed the issue of testamentary intent in an analogous setting involving' the 1981 repeal of forced heirship for ascendants. The testament in Williams which was written in 1977 before the law was changed bequeathed to Williams’ “beloved father ... his forced portion,” with the remainder of the estate going to Williams’ son. When Williams’ death occurred after the law was changed, the courts were required to interpret the legacy of the “forced portion” without any special transitional rule for interpretation.
The important first question addressed by the supreme court in Williams was whether the intent for the disputed legacy could, in the words of Civil Code article 1712, be “principally ... ascertained” from the language of the will itself. Despite a strong dissent urging that the plain language of the will was clear and susceptible of only one meaning, the court concluded:
In the present case the provision in the testatrix’s will leaving the “forced portion of my estate” to her father was subject to two reasonable interpretations. The testa: trix, who had been informed about the forced heirship law in existence at the time of the making of the will, could have intended by her words to leave to her father one-fourth of her estate, which was the amount of the forced portion founder the existing law. On the other hand, the testatrix could have intended to leave her father only the portion of her estate required by the forced heirship law existing at the time of her death, whether the forced heirship law remained the same or was subsequently changed to increase, decrease or abolish forced heirship.
Id. at 975.
Faced with two constructions of the testamentary language, the court turned to La. C.C. art. 1715 finding that “when a provision in a will is subject to more than one equally reasonable interpretation, then the court may consider all circumstances existing at the time of the execution of the will (and not just the language of the will) which may aid in determining the intent of the testator.” Id. Thus, from a review of the extrinsic evidence of Williams’ relationship with her father and other circumstances, the court concluded that the legacy of the “forced portion” was as positive expression of a donative intent and that Williams had no intent to omit her father from a share of her estate.
The supreme court’s analysis in Williams is significant for this case and an understanding of Section 2501. Before an interpretation of a testament becomes necessary at all so as to allow a court to consider other extrinsic circumstances or to resort to a statutory presumptive rule for construction, the language of the testament must be susceptible of different meanings or be ambiguous. The words of the testament, like the language of a statute or a contract, should be applied as written with no further interpretation or search for intent if a single and clear intent is present. La. C.C. art. 1712; see also La. C.C. art. 9 for the interpretation of laws and La. C.C. art.2046 for the interpretation of contracts. Like the code articles dealing with the interpretation of laws (La. C.C. arts. 10, et seq.) and contracts (La. C.C. arts.2047, et seq.), the interpretive articles which are listed in the code following the paramount rule of Article 1712 act only as aids for interpretation fewhen necessary. Section 2501(B) is a similar statute to aid in the determination of the testator’s intent if the language of the will, as in Williams, becomes susceptible of two reasonable constructions because of the change in the law of forced heirship following the confection of the-will.
Considering the language of Mr. Boyter’s will, there is no reference to the plaintiffs or use of any terminology regarding the law of *690 forced heirship. The language leaves all of the estate to two of the children and the other- two children are left out entirely. The language of the testament is therefore clear and unambiguous and expresses one intent. A need for interpretation of the testament to construe something beyond the single intent clearly expressed in its language is not present.
Moreover, we find it significant that at the time that this testament was executed in 1991, the existing expression of the law of forced heirship by the' legislature gave no forced heirship rights to Mr. Boyter’s children. Although the 1990 legislative changes to the law of forced heirship were later declared unconstitutional in 1993 in Succession of Lauga, the understanding of the law at the time of Mr. Boyter’s will in 1991 was that his children would have no rights as forced heirs.[4] From this prevailing understanding regarding the state of the law in 1991, Mr. Boyter could only have considered that forced heirship had been abolished for his two major children allowing him to choose to leave them out of his will- altogether. With the state of law in 1991 being, in this sense, the same asjjthe law at the time' of Mr. Boyter’s death in 1997, the transitional purpose underlying Section 2501(B) is not implicated in this case.
Therefore, we conclude from the language of Mr. Boyter’s will that his intent was clearly expressed. There is ho donative intent for legacies to the plaintiffs which could have become clouded by the change in the law of forced heirship. Section 2501(B)’s transitional interpretative provisions, which themselves may be unclear and in need of statutory interpretation, may not be applied under the pretext of pursuing Mr. Boyter’s intent. As one of our earliest cases on testamentary interpretation observed: “Candles are not to be lighted, when the sun shines brightly.” Theall v. Theall, 7 La. 226 (1834). Mr. Boy-ter’s intent is clear bn the face of his will, and we affirm the ruling of the trial court that plaintiffs have stated no cause of action in this case.[5] .

Conclusion

The trial court’s dismissal of plaintiffs’ claims seeking the rights of reduction and collation in the Succession of Joseph Page Boyter is affirmed. Costs of appeal are assessed to plaintiffs.
AFFIRMED.
NORRIS, C.J., concurs with reasons.

. Act 147 of 1990 was a revision of the 1989 legislation, Act 788, which had first enacted the change in the law of forced heirship and had provided for the effective date of July 1, 1990.

. As first enacted in 1990, Section 2501 was almost identical to the 1996 version of Section 2501 which is applicable in this dispute and is quoted below. As originally enacted, Section 2501 applied to the construction of testaments executed prior to July 1, 1990, while the 1996 version moved that date forward to apply to testaments executed prior to January 1, 1996.

. Pressing this argument has the effect of resurrecting forced heirship rights against the rights of persons acquired in successions opened after the 1995 constitutional mandate that "forced heirship is abolished in this state.” We therefore choose to interpret Section 2501(B) not as a substantive provision that grants the collation and reduction rights which plaintiffs now claim in possible conflict with the constitution, but as a statute for the aid in the interpretation of testaments.

. Two jurisprudential presumptions which bear of this consideration are: (i) the legislature can be presumed to have enacted legislation with deliberation and full knowledge of the constitution, Colwell v. State, Office of Attorney General, 506 So.2d 941 (La.App. 1st Cir.), writ denied, 508 So.2d 89 (La.1987) and (ii) the attorney in aiding the testator in expressing testamentary intent through the drafting of the will is presumed to know the law, Succession of Acy, 97,0661 (La.App. 1st Cir.4/8/98), 711 So.2d 341.

. Since we choose not to apply Section 2501(B), plaintiffs’ assignment of error regarding the trial court’s allowance of the expert testimony on the construction of Section 2501(B) is not considered.