707 So.2d 1302 (1998)
SUCCESSION OF Nora Gretchen Carlyon HACKNEY.
Paul Raymond Hackney, Executor Appellant,
Lamar Russell, III, MoverAppellee.
No. 97-859.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1998.
Writ Denied April 24, 1998.
*1304 Gus Voltz, Jr., Alexandria, for Paul Raymond Hackney.
Gregory Scott Erwin, Alexandria, for Lamar Russell, III.
Before YELVERTON, WOODARD and AMY, JJ.
WOODARD, Judge.
Paul Raymond Hackney, the testator's third husband, appeals the trial court's annulment of his wife's will and the naming of Lamar Russell, III, the testator's only child, as executor of the estate, in his place. For the reasons assigned below, we reverse.

FACTS
Nora Hackney died on April 20, 1996. Her survivors include her son from her first marriage, Lamar Russell, III, (Russell), and her third husband, Paul Raymond Hackney (Hackney). She appointed Hackney as the testamentary executor in her October 29, 1991 statutory will. After the will was probated and Hackney was confirmed as the executor on August 2, 1996, Russell brought actions, on January 21, 1997, to contest it.
By judgment dated April 2, 1997, the court declared the entire will null and named Russell, upon his compliance with the law, as executor in Hackney's place. Hackney brought this devolutive appeal after his motion for new trial was denied.
ASSIGNMENTS OF ERROR
Hackney asserts that the trial court erred in:
1. Holding that there were two bequests in the second paragraph of the testatrix's will which canceled each other.
2. Holding that where the intent of the testator is not easily ascertained by reading one of several bequests, the entire will is null and void.
3. Refusing to accept testimony of the Notary who prepared the will, regarding testator's intent at the time of the signing of the will.
4. Removing the testamentary executor without following statutory procedure and without any evidence to support his removal.
LAW
This case involves a son's opposition to his mother's will, which if deemed valid, would benefit her surviving widower in community. In will contest cases, the factual findings of the trial court are afforded great weight and will not be disturbed on appeal in the absence of manifest error. In re Succession of Fellman, 96-1738 (La.App. 4 Cir. 8/6/97), 698 So.2d 477.

CANCELLATION OF BEQUESTS
Hackney argues that the trial court committed error by ruling that the following paragraph of the decedent's will contained two mutually exclusive bequests which canceled each other out, thus making the will invalid:
Second: I give, devise and bequeath unto my husband, PAUL RAYMOND HACKNEY, the disposable portion of my interest in and to the Community of Acquets and Gains which existed between us, subject to the right of usufruct of my husband, PAUL RAYMOND HACKNEY, until such time as he shall remarry or until his death, which I grant and confirm unto him.
(Emphasis added.)
Russell finds guidance in the case of Succession of Williams, 132 La. 865, 61 So. 852, 852 (1913), where five of David F. Williams' children filed suit to set aside his will based on the following bequests:
I leave and bequeath to my wife, Briget Farley, all I may be possessed of at the time of my death, she to have the usufruct during her life time provided she does not get married again and behaves herself....
(Emphasis added.) In that case, the Louisiana Supreme Court ruled as follows:
True, he bequeathed to his wife "all his property," and in the same sentence he bequeathed the usufruct to her. As to half, he sought to give that which did not belong to him. In the second place, he bequeathed the usufruct to her, something that, as a matter of course, could not be done. These legacies cannot be recognized, *1305 being contradictory and one destructive of the other.

(Emphasis added.) Id. at 854.
Our review of the Williams case reveals that it has been overruled by Jordan v. Filmore, 167 La. 725, 120 So. 275 (1929). Although Russell may argue, in retrospect, that it was overruled on other grounds, this case has never again been cited for the proposition that the two legacies in question are irreconcilable. Therefore, we review this assignment of error based on other principles.
According to La.Civ.Code art. 535, "Usufruct is a real right of limited duration on the property of another." The term usufruct comes from the word "usus," meaning the right to use, and "fructus," meaning right to the fruits. Giroir v. Dumesnil, 248 La. 1037, 184 So.2d 1 (1966). Russell points out that in conferring a usufruct, the testator intends to confer less than full ownership to the legatee. Succession of Goode, 425 So.2d 673 (La.1982).
In keeping with the rationale that "[a] disposition must be understood in the sense in which it can have effect, rather than that in which it can have none," La.Civ.Code art. 1713, we, therefore, consider how the testator's dispositions can be reconciled. According to Giroir, 248 La. 1037, 184 So.2d 1, full ownership consists of the "usus," the "fructus" and the "abusus," which are "united in the same person." Thus, full ownership includes usufruct, and the two terms do not necessarily contradict each other. In addition, we find that the testator's repetition of Hackney's name after the phrase "subject to the usufruct of my husband" is significant, since she already stated earlier in the paragraph that "I give, devise and bequeath unto my husband, PAUL RAYMOND HACKNEY, the disposable portion of my interest." We conclude that she repeated his name to refer to something other than the disposable portion of her interest in the community. Moreover, we also find that because the phrase "subject to the usufruct of my husband" is offset by commas, that phrase refers to something other than the first disposition.
Furthermore, had the decedent's succession proceeded intestate, Hackney would have received, at the very least, the usufruct according to La.Civ.Code art. 890. If we were to accept Russell's argument that the testator intended to confer less than full ownership to Hackney, then the will itself would be a useless document since the surviving spouse inherits the usufruct in a deceased spouse's estate by operation of law, unless there is an adverse testamentary disposition. Morgan v. Leach, 96-0173 (La. App. 1 Cir. 9/27/96), 680 So.2d 1381. It would be illogical for the testator to have gone through the trouble of writing a will and appointing her husband as executor without intending to give him more than the law allowed.

NULLITY OF WILL
It is well settled that the invalidity of a portion of a will does not invalidate the will in its entirety. Succession of Lissa, 195 La. 438, 196 So. 924 (1940). According to Succession of Fertel, 208 La. 614, 23 So.2d 234, 238 (1945), when a will is subject to two interpretations and its intent is "obscured by conflicting expressions," the law "selects that which saves from total intestacy. The testator's intention is his will. This is the first rule of interpretation, to which all others are reduced."
Although we held that the bequests did not cancel each other out, we note that Hackney would still prevail in light of the third section of the will: "I give, devise and bequeath unto my son, LAMAR RUSSELL, III, all of my separate property, which consists of the following: ...." When a provision in a will standing alone is not clear, the "court must take into consideration the entire context of the will." Estate of Doucet, 94-61, 94-62 (La.App. 3 Cir. 10/5/94), 643 So.2d 882, 884. The court must also consider other clauses "to reach, if possible, an interpretation which harmonizes the whole." Succession of Meeks, 609 So.2d 1035, 1037 (La.App. 2 Cir.1992), writ denied, 612 So.2d 86 (La.1993) (citations omitted). Therefore, we conclude that the testator intended to confer full ownership of the disposable portion of her interest in the community to Hackney and the balance of her interest in the community property to her son, Russell, subject to the usufruct in favor of her husband. *1306 Finally, Russell would get full ownership of her separate property.

TESTIMONY OF NOTARY
We next consider whether it was error for the trial court to not consider the testimony of the notary who prepared the will, as extrinsic evidence, in order to ascertain the intent of the testator. Courts must interpret a will according to its plain language since "the intent of the testator is the paramount consideration in determining the provisions of a will." Succession of Schiro, 96-1567 (La.App. 4 Cir. 4/9/97), 691 So.2d 1374, 1377, writs denied, 97-1400 (La.9/5/97), 700 So.2d 518; 97-1423 (La.9/5/97), 700 So.2d 518. However, when ambiguity clouds the testator's intent, "the court may consider all circumstances existing at the time of the execution of the will, and not just the language of the will, which may aid in determining the intent of the testator." Id.
La.Civ.Code art.1715 provides that:
When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.
We agree with the trial court's "first impression" that the paragraph in question "creates an ambiguity" and that there was an "obvious ambiguityphraseology, typographical, whatever it was when the will was drawn." Therefore, the court erred in retracting its earlier statement that "the ambiguity, once you read it, stares you right in the face" after taking a five-minute recess.
Thus, to resolve the ambiguity, we may look to "extrinsic evidence and circumstances throwing any light on testator's intentions." Estate of Doucet, 643 So.2d at 884.

Notary's Testimony and Notes
When the notary's testimony was proffered, he testified that the testator wanted to leave Hackney as much as she could, including the usufruct over the balance. Although the notary could not point to a specific section in his notes where he wrote that Hackney was to receive full ownership of the testator's disposable portion, he was adamant in his recollection of the testator's intent. He also stated that he would not have written everything in his notes. We cannot discredit his testimony simply because of the sketchiness of those notes.

Other Circumstances
The notary's testimony included Mr. Hackney's statutory will which was executed on the same day that the testator executed her will, before the same notary and the same witnesses, bequeathing the following to his wife:
I give, devise and bequeath unto my wife, NORA GRETCHEN CARLYON HACKNEY, all automobiles that I may die possessed of and one two (2) bedroom Detroiter Mobile Home located on Henderson Hill, Boyce, Louisiana, subject to the right of usufruct of my wife, NORA GRETCHEN CARLOYN HACKNEY, over the remainder of my entire estate until such time as she shall remarry or until her death, which I grant and confirm unto her.
(Emphasis added.) While neither Mr. or Mrs. Hackney's will is artfully crafted, we find that the inclusion of the phrase "over the remainder of my entire estate" in Mr. Hackney's will sheds light on the parties' reciprocal intent to leave each other certain things in full ownership and to leave each other the usufruct of the remainder. As in Giroir, 248 La. 1037, 184 So.2d 1, where the court resolved the ambiguity of the will in the spouse's favor because the decedent and his spouse appeared before the same notary with the same witnesses to make reciprocal wills, we, too, conclude that this is evidence of the testator's intent to give her husband full ownership and not just the usufruct.
Based on the above, we submit the possibility of a typographical omission of the words "over the remainder of my entire estate" from the bequest in question. Had that qualifying phrase been inserted, the bequest to Hackney would have read as follows:
I give, devise and bequeath unto my husband, PAUL RAYMOND HACKNEY, the disposable portion of my interest in and to the Community of Acquets and Gains which existed between us, subject to the right of usufruct of my husband, PAUL RAYMOND HACKNEY, over the remainder of my entire estate until such *1307 time as he shall remarry or until his death, which I grant and confirm unto him.
Even though it could still be expressed better, reading that omitted language into the will would result in a plausible interpretation of the will.
Consequently, we hold that the two dispositions in the will are reconcilable, and the trial court committed manifest error in invalidating the will.

REMOVAL OF TESTAMENTARY EXECUTOR
Since the trial court has discretion to remove Hackney as executor, we may not reverse the court's decision absent abuse of that discretion. Succession of Songne, 94-1198 (La.App. 3 Cir. 11/2/95), 664 So.2d 556, writ denied, 95-2877 (La.2/2/96), 666 So.2d 1101.
La.Code Civ.P. art. 3182 sets out the reasons and the procedure for removing a succession representative:
The court may remove any succession representative who is or has become disqualified, has become incapable of discharging the duties of his office, has mismanaged the estate, has failed to perform any duty imposed by law or by order of court, has ceased to be a domiciliary of the state without appointing an agent as provided in Article 3097(4), or has failed to give notice of his application for appointment when required under Article 3093.
The court on its own motion may, and on motion of any interested party shall, order the succession representative sought to be removed to show cause why he should not be removed from office. The removal of a succession representative from office does not invalidate any of his official acts performed prior to his removal.
(Emphasis added.)
Hackney argues that his removal as the executor was contrary to law because the trial court did not mention the removal in its initial ruling. On this basis, we disagree. As this court held in Comeaux v. City of Ville Platte, 617 So.2d 1313, 1318 (La.App. 3 Cir. 1993), "Reasons for judgment by a trial judge are not controlling and do not constitute the judgment of the court." Further, in that case, we alluded to the court's reasoning in Hebert v. Hebert, 351 So.2d 1199, 1200 (La. 1977), wherein the court stated, "Furthermore, we think that the legislature intended to prohibit alterations in the substance of the written judgment after it has been signed by the judge and not alterations in the judge's oral statements from the bench." (Emphasis added.)
However, we find error in Hackney's removal because there were no grounds to remove him as the executor. According to Russell's Petition to Annul Probate of Testament and Revoke Appointment and Removal of Executor, Hackney's removal is based on two arguments. First, Russell asserts that since the testament is null, then there is no need for an executor. If that were true, then neither Hackney nor Russell could be an executor. Nevertheless, since we held that the will was valid, Hackney cannot be removed as an executor on that basis. We further disagree that the invalidation of a will dissolves the need for a succession representative. According to the Louisiana Supreme Court, "The functions of an executor are to collect the assets of the estate, pay the succession debts, and distribute the balance of the property in accordance with the decedent's will or the laws governing intestate successions." Succession of Wallace, 574 So.2d 348, 356 (La.1991) (emphasis added).
Second, Russell contends that Hackney is "unfit to continue" as an executor because he mismanaged the affairs of the estate. There is absolutely no evidence or testimony in the record to support that allegation.
As for the argument that the judgment was presented to counsel for Hackney on April 2, 1997 and that it was signed without objection, we observe that the page of the judgment bearing the signature of counsel for Hackney reads "APPROVED AS TO FORM." (Emphasis in original.) Therefore, based on our review of the record, we find no basis for removing Hackney as executor and hold that the trial court abused its discretion in doing so.

MOTION TO REMAND
Alternatively, Russell requests that should Hackney's status as executor be reinstated, we remand this case to determine Hackney's *1308 capacity to continue as an executor in light of his present residence in a nursing home. This is contested. Since this ground has never been determined by the trial court and that court has continuing jurisdiction, we believe that, if, indeed, Mr. Hackney is now incapable of discharging his duties, the better procedure is to file a Motion for Removal in the district court.

CONCLUSION
Based on the foregoing, we reverse both the trial court's decision to invalidate the will and its removal of Hackney as executor.
REVERSED.