595 So.2d 805 (1992)
SUCCESSION OF KING.
No. 23270-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1992.
Writ Denied May 8, 1992.
*806 Theus, Grisham, Davis & Leigh by Robert Lee Curry, III, and Paul D. Spillers, Monroe, for appellant Louisiana Methodist Orphanage.
Taylor, Porter, Brooks & Phillips by Mary E. Tharp, Blaine Adkins, Baton Rouge, for appellant LSU Experiment Station.
Hayes, Harkey, Smith, Cascio & Mullens by Thomas M. Hays, Monroe, for appellee Ralph B. Bell, Adm'n.
McKeithen & McKeithen by Bruce B. McKeithen, Monroe, for appellees Presumptive Heirs of Mrs. King.
Benjamin Marshall, IV, Monroe, for appellees Absent Legatees.
Dollar, Price, Noah & Laird by Donald R. Jones, Monroe, for Richard Allen.
Before LINDSAY, BROWN and STEWART, JJ.
LINDSAY, Judge.
This appeal presents the issue of whether an olographic will, written and dated in the handwriting of the testatrix, must be signed at the end in order to be valid, as well as whether the document presented for probate was indeed the document which the decedent intended to be her last will and testament. Legatees under the will appeal a trial court judgment which found the will to be invalid for want of form. For the following reasons, we affirm.

FACTS
The testatrix, Eleanor Maxwell King, died on January 23, 1991. Mrs. King was an 83-year-old former school teacher who was preceded in death by her husband and her parents. She had no children, siblings, nieces or nephews. However, she is survived by other collateral relations.
On March 13, 1991, Ralph B. Bell, a second cousin of Mrs. King, submitted a two-page document for probate. These pages were in a spiral notebook. The document is dated, and although it commences by declaring that it is Mrs. King's will, it is not signed at the end. At the top of the first page the following was handwritten:
Will of Eleanor Maxwell King
(Mrs. Charles Solon King)
The first page of the document contained a list of particular legacies. It read, in pertinent part:
Subject to change, but as I see it now, August 23, 1987
1. House in West Monroe to the Methodist Childrens' Home in Ruston in memory of my mother, Ada Allen Maxwell.
2. The 132 + acres and house in Jackson Parish at Eros to the [illegible] Experiment Station, Calhoun
2.A. CAR
. . . .
7. Furniture to (Same as no. 1)
. . . .
The second page contained a provision for the disbursement of funds from several specified bank accounts to seven named individuals. The name of the last person on the list had been struck out, and question marks had been placed beside the names of two other persons on the list. Various parts of the document were written in different ink colors or pencil. The time and date of an appointment is noted in the margin on the first page. Several comments were written at the top of the second page in another person's handwriting. The phrase "Residuary Clause" was written in the top, left-hand corner. On the right-hand side, at the top, was written, "Executor *807 of will," followed by the notation "can be individual or can be bank, can be attorney." Also, on the back of the second page of the purported will, there were unrelated comments in Mrs. King's handwriting about the DAR honor roll.
The trial court appointed attorneys to represent the interests of the named legatees and the presumptive heirs of Mrs. King. Several legatees retained their own counsel. A contradictory hearing was held to determine whether the will was valid and should be admitted to probate.
At the hearing, Mr. Bell and Richard Drew Allen, both of whom were legatees under the will, testified that the document was in the handwriting of Mrs. King. (Mr. Allen was a friend and neighbor of Mrs. King.) Mr. Bell also testified that Mrs. King told him that she "had her will written out." Mr. Bell testified that in November, 1990, he and his wife had accompanied Mrs. King to the Central Bank in Monroe to have the will reviewed by a bank trust officer. At that time, the Bells saw Mrs. King open the notebook wherein the will was later found and examine some pages. She then declared that she had made the will in 1987 and she was still satisfied with it. Mr. Bell testified that she told him that she wanted her farm to go to the LSU Agricultural Experiment Station and a certain antique desk to be placed in a museum. Two such provisions were found in the will offered for probate.
The Central Bank trust officer, Walter E. Busby, testified that he met with Mrs. King and made several suggestions to her about will provisions. He noted those suggestions in the top margin of the second page of the document. He also recommended three attorneys who could assist her in the preparation of a will. One of those attorneys, Percy A. Ford, Jr., testified that in November, 1990, he received a telephone call from Mrs. King in which they discussed preparation of a will. She was to call him back for an appointment but never did so.
At the conclusion of the hearing, the trial court ruled that the document was not in proper form for an olographic will because, although the testatrix's name was written at the beginning of the list of bequests, there was no signature at the end. The trial court also noted that the document was prepared in different inks and pencil, denoting that it had been written at different times. There were also some strike-overs and question marks beside the names of some of the legatees, and unrelated material was written on the back of the second page. The court stated that the manner in which the document was written, as well as its placement in a notebook, showed that it was merely a collection of notes for use in confecting a will at a later time. Consequently, the petition for probate was denied. However, the court appointed Mr. Bell as administrator of the estate.
The Louisiana Methodist Orphanage, d/b/a Methodist Children's Home, and the LSU Board of Supervisors, as administrator of and d/b/a LSU Experiment Station at Calhoun, Louisiana, legatees under the purported will, appeal the trial court judgment.

PLACEMENT OF SIGNATURE ON AN OLOGRAPHIC WILL
The appellants argue that the trial court erred in holding that the will was invalid for want of form because Mrs. King did not affix her signature to the end of the document. They contend that LSA-C.C. Art. 1588 only mandates that an olographic will be signed by the testator and that Mrs. King's writing of her name at the beginning of the document satisfies that requirement.
LSA-C.C. Art. 1588 states:
The olographic testament is that which is written by the testator himself.
In order to be valid, it must be entirely written, dated and signed by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the State.
(Emphasis ours.)
Although LSA-C.C. Art. 1588 does not specify that the testament must be signed at the end of the document, the jurisprudence of this state has firmly established *808 that principle. See In re Armant's Will, 43 La.Ann. 310, 9 So. 50 (1891); In re Poland's Estate, 137 La. 219, 68 So. 415 (1915); Succession of Dyer, 155 La. 265, 99 So. 214 (1924); Succession of Fitzhugh, 170 La. 122, 127 So. 386 (1930); Succession of Bechtel, 99 So.2d 495 (La.App. Orleans 1958). See and compare McGuffin v. Jones, 157 So.2d 256 (La.App. 3d Cir.1963), writ refused, 245 La. 573, 159 So.2d 286 (1964), and Succession of Robinson, 225 So.2d 149 (La.App. 4th Cir.1969), writ refused, 254 La. 851, 227 So.2d 594 (1969).
The Armant case is factually similar to the present case. There, the testatrix's handwritten will was captioned "Testament d'Aglae Armant" but was not signed at the end. The court found that even if the document conveyed the testatrix's intention, it was nonetheless null if not clothed with the forms prescribed by law.
The commentaries have likewise accepted the requirement that the signature must be affixed to the end of an olographic will. In Comment, Formalities of the Olographic Will, 2 Loy.L.Rev. 164, at 177 (1944), the author stated:
Although Article 1588 is silent as to the location of the testator's signature, the jurisprudence is uniform to the effect that the signature must be placed at the end of the will. The purpose of this requirement is to make certain the completion and perfection of the instrument. Therefore, a signature on an envelope in which an unsigned testimentary [sic] paper is enclosed is not a sufficient signature. All that the superscription indicates is that the envelope contains the testator's unsigned and incomplete will which, for his own convenience, could readily be identified and completed at a later date if he remained of the same disposing mind. For similar reasons a writing containing the caption "Testament d'Aglae Armant" was held invalid on the ground that the signature must appear at the end of the act. However, the jurisprudence is also to the effect that the signature may precede the date. But provisions of a dispositive nature following the signature can have no effect. This is because the placing of the signature at the end of the will is predicated upon the approval which the testator thereby gives to the testamentary dispositions which precede it.
(Footnotes omitted.)
See also 3 M. Planiol, Treatise on the Civil Law, § 2689 at 318 (11th ed. La.St. L.Inst. trans.1959); Oppenheim, The Testate Succession, 36 Tul.L.Rev. 1, 8 (1961); 10 L. Oppenheim, Louisiana Civil Law Treatise, "Successions and Donations," § 109, at 198 (1973); and Comment, Donations Mortis Causa, 22 Loy.L.Rev. 768, 778 (1976).
The appellants acknowledge these precedents. However, they contend that the Louisiana Supreme Court has implicitly overruled these cases in Succession of Boyd, 306 So.2d 687 (La.1975), and Succession of Guezuraga, 512 So.2d 366 (La. 1987). They argue that these cases indicate that the court has relaxed the stringent requirements on the forms of various testaments and that the olographic will in the present case should consequently be upheld.
In Succession of Boyd, supra, an olographic will with an uncertain date ("2-8-72") had been declared invalid by the trial court. The appellate court reversed, and the Supreme Court affirmed its decision. The Supreme Court distinguished between a will without a date and one with an ambiguous date, holding that extrinsic evidence was admissible to establish the certainty of an ambiguous date. In so ruling, the court went against a substantial body of jurisprudence to the contrary. It acknowledged the public policy to give effect to the wishes of the testator when not prohibited from doing so by statute, stating that the "object of the law is surely not to frustrate the will of the testator."
In Succession of Guezuraga, supra, a two-page statutory will was presented for probate. The testatrix had signed the first page at the end of the dispositive provisions but had not signed the second page which contained only the continuation of the attestation clause from the previous page. The trial court granted the petition *809 for probate, but the court of appeal reversed. However, the Louisiana Supreme Court reversed the court of appeal and reinstated the judgment of the trial court. The Supreme Court found that the testatrix's failure to sign the second page was not a fatal defect defeating the validity of the will. It concluded that, although LSA-R.S. 9:2442 required that the testator sign at the end of a statutory will and each sheet of the instrument, there was no specific requirement that the attestation clause be signed. Also, the court found that the attestation clause was not part of the will itself. The court observed that the requirements for the validity of statutory wills were to be liberally construed, provided there was substantial compliance with the statute.
The courts have admittedly relaxed certain formalities pertaining to the execution of testaments, including the writing of olographic wills. Slash dates may be used. Succession of Boyd, supra. Also, the will may be written in a combination of various inks and pencil, and it need not be written out in its entirety on the same day. Succession of Smart, 214 La. 63, 36 So.2d 639 (1948); Oroszy v. Burkard, 158 So.2d 405 (La.App. 3d Cir.1963).
However, the requirement that the testatrix's signature be affixed to the end of an olographic will has not been relaxed by the Louisiana Supreme Court. The purpose of this rule is to show that the provisions preceding the signature are approved by the testatrix. Furthermore, the placement of the signature at the end conclusively demonstrates that there are no other provisions. Under the circumstances of the present case, we can only speculate as to whether or not there were any other provisions in Mrs. King's will. The second page ends with a list of seven legatees (one of whom has been struck out). It is entirely possible that yet another page listing other legatees could have originally been in the spiral notebook. Due to the absence of Mrs. King's signature, we cannot say that the document is complete.
Based on the foregoing, we find this assignment of error is without merit.

TESTAMENTARY INTENT
The trial court also found that the document lacked the requisite testamentary intent to be Mrs. King's will, and that the document appeared to contain notes for use in the future confection of a will. Appellants contend that the trial court erred in this finding. They point to Mrs. King's statement in the presence of the Bells that the document she was examining in the notebook was her will and that it was still in keeping with her wishes. Also, the document was written in 1987, and it was later shown to Mr. Busby by Mrs. King only at the suggestion of the Bells.
We are not persuaded that the trial court was clearly wrong in its factual finding. Several factors, as outlined by the trial court, support its ruling. The preamble of the document states that Mrs. King's bequests were "[s]ubject to change but as I see it now, August 23, 1987...." The document was found in a spiral notebook, along with other notes. Mrs. King wrote unrelated information about the DAR on the back of the last page of the purported will, and wrote the date and time for an appointment in the margin of the first page. The placing of these writings on the document denotes the unimportance Mrs. King apparently attached to the document. Also, she was apparently uncertain about several legatees as shown by the striking through of one legatee's name and the placement of question marks beside the names of two others. At least one of the bequests was incomplete (2.A. Car....), i.e., reciting an object with no disposition. Furthermore, Mrs. King allowed Mr. Busby to write on the second page of the document. Mrs. King also initiated contact with one of the attorneys recommended by Mr. Busby for the purpose of making a will.
All of these factors, coupled with Mrs. King's failure to sign the document at its end, lead us to conclude, as did the trial court, that there was no testamentary intent. The document appears to be nothing more than a collection of notes compiled by Mrs. King for subsequent inclusion in a *810 formal will. See and compare Hendry v. Succession of Helms, 557 So.2d 427 (La. App. 3d Cir.1990), writ denied, 560 So.2d 8 (La.1990).

CONCLUSION
The judgment of the trial court is affirmed. Costs are assessed equally to the appellants.
AFFIRMED.