MOORE, J.
hThe plaintiffs, the intestate heirs of Delbert L. Henderson; appeal a summary 'judgment that dismissed their’ claim to annul his will or, in the alternative, to declare invalid the portion thereof that directed his executor to establish an educational trust for family members. ‘ We affirm.

Factual Background

Henderson, a successful electrical contractor in Monroe, died on January 14, 2011. His wife had predeceased him and the couple had no children. Barney M. Tucker, Henderson’s. CPA, filed .a petition for probate showing that Henderson had executed a-notarial will just, two months earlier, on November 11, 2010. The will named Tucker as executor. The district court filed an order of probate, and Tucker has filed annual , accounts and paid essential succession debts ever since. The detailed descriptive list, showed a large estate, including Henderson’s house on Bayou Shores Drive,, together with CDs, sav *11 ings bonds, annuities and securities, for a total estimated value of slightly over $2.5 million.
On November 23, 2011, Dale A. Thomas and 25‘ ' other intestate heirs of Henderson’s filed the instant petitiorf’to annul the will for lack of testamentary capacity or to declare a portion of it invalid. The portion they contested was ¶¶ 7-11, which bequeathed $1.45 million to'establish an academic scholarship fund for his family members:
Seventh: If any of my brothers or sisters listed above predeceases me, then the respective portion of said deceased brother and/or sister shall’ revert back to the HendeRson Academic[1] ScholaRShip Fund described below.
Should either of my sisters-in-law predecease me, then the respective portion of said deceased sister-in-law shall * * * |2revert back to the Henderson Academic Scholarship Fund described below. .
Eighth: Any donations or gifts made by me to any of the above named during my . lifetime [are] to be considered an extra portion to be received by that-person in addition to the legacy, bequeathed herein.
Ninth: I hereby give, devise and bequeath the sum of $1,450,000.00 * * * to be used to establish the Henderson Academic Scholarship Fund for the purpose of providing academic scholarships to the members of my family who meet'the following requirements and subject to the following conditions to wit:
a.These academic scholarships are available to any of my family meqi-bers, to include family members of my brothers and sisters [then listed].
b. The academic scholarships are also to be available to the family members of the brothers and sisters of my late wife, who are [listed].
c. The scholarships are available only to a family member that attends Louisiana Tech University as a full time student, and is to be limited to four years of attendance as an undergraduate.
d. The scholarship is to be used to pay for the actual cost of tuition, books and fees, and residence expenses subject to a maximum of $2,000 per recipient per quarter and tó be paid only after all other available means of'financial aid are ex- ' hausted. The maximum amount of $2,000 per recipient may be adjusted to accommodate the increase in ' the cost of living set forth in the Consumer Price Index * * *.
e. In order to qualify for the scholarship initially the recipient must be enrolled as a full time student. During each quarter or semester as ■ the case may be, the recipient must have achieved an overall minimum 3.0 grade point average while enrolled as a full time student.
f. The recipient must provide such ■verification of full time status, grade point average, costs and expenses as the fund manager requires.
g. The scholarships are for one academic year and must be reapplied for each successive year thereafter. In addition’ to above conditions, approval is subject to the availability of funds.
... IsTenth: I direct my executor to take such steps, that he in his sole discretion deems necessary, to see that the Henderson Academic Scholarship Fund *12 is legally established in the form of a trust, endowment, or other entity customarily used in this type of arrangement to ensure that the scholarship funds are safely invested and properly managed in ‘order to fulfill the intent of this bequest.
Eleventh: I hereby direct the remainder of my property, which I die possessing, whether real or personal, be held in the estate to be sold when best determined by the Executor of my estate, with the funds to be added to the HendeRson Academic Scholarship Fund described above.
The executor denied all allegations, arguing that “Henderson Academic Scholarship Fund” was merely the title that Henderson wanted to apply to whatever legal vehicle Tucker chose, and the requirements were the minimum standards used by most colleges to award scholarships.
In three prior motions for summary judgment, the parties set out their positions. The plaintiffs urged that the will did not create an educational fund, and hence there was no entity capable of receiving a donation, La. C.C. art. 1472; the contested paragraphs stated no intent to create a trust; the disposition was subject to an illegal suspensive condition, La. C.C. art. 1473; and the will improperly delegated testamentary authority to a third person, La. C.C. art. 1572. In response, the executor showed that Henderson had considered (but not executed) four prior wills, including one that donated $1.2 million directly to La. Tech to establish an endowment for his family members, and that this proved his intent to create a scholarship fund. The district court denied this motion for summary judgment.
The executor then filed his own motion for summary judgment urging that the will did indeed create a scholarship fund-although the trust had not 14been fully implemented in the customary manner at the time of Henderson’s death, and that this procedure was valid under Oroszy v. Burkard, 158 So.2d 405 (La.App. 3 Cir.1963). He also attached the affidavit of his attorney stating that Henderson really did intend to create a scholarship fund, only, that he did not want to pay La. Tech’s 15% .administrative fee. The plaintiffs filed a cross-motion for summary judgment, reiterating their earlier,position.[2] The court denied both motions.

The Instant Motion for Summary Judgment

In February 2015, the executor filed the instant motion for summary judgment, again urging that the will created a testamentary trust which was valid under Oroszy v. Burkard, supra; the beneficiaries existed at the time of Henderson’s death, thus satisfying-Lá. R.S. 9:1972; and the law permits the testator to delegate to his executor-the authority, in the executor’s discretion, to designate educational éntities or trustees to receive the legacy, La. C.C. art. 1572.
The plaintiffs opposed the motion, urging that from the wording of the will, no trust was intended or created, and the law does not permit the executor to allocate the funds to the recipients of his choice. In support, they cited Fink v. Fink, 12 La. Ann. 301 (1857); Succession of Baker, 432 So.2d 817 (La.1983); and Succession of Soileau, 2005-655 (La.App. 3 Cir. 12/30/05), 918 So.2d 563. They also argued that the shifting terms of the four previous, unexecuted wills created a genuine *13 issue as to Henderson’s true testamentary intent.
IfiAfter a hearing in April 2015, the district court stated that Henderson’s testamentary capacity was “not at issue-'any longer” and found that the plaintiffs’ argument was “interesting but not compelling.” The court further found, as a matter of fact and law, “a valid testamentary trust was created by the testament.” The court granted the executor’s motion for summary judgment and rendered judgment dismissing the plaintiffs’ claims.

The Plaintiffs’ Position

The plaintiffs appealed, raising the single assignment of error that the court erred in granting summary judgment dismissing all their claims and holding that the will created a . testamentary trust. They identify four interrelated issues which, in their view, preclude summary judgment.
First, the will states no intent to create a trust, but only to delegate authority to the executor. They concede that the intent of the testator controls, La. C.C. art. 1611, that forced interpretations are not permissible, Succession of Martin, 262 So.2d 46 (La.App. 1 Cir.), writ denied, 262 La. 472, 263 So.2d 729 (1972), and that no particular language is required to create a trust, La. R.S. 9:1753. However, they argue that this will, fairly read, does not create a trust, but only “ascribes” to the executor to “see that” an entity is established after the testator’s death. Also, Henderson was using an attorney, who is presumed to know how to create a trust and to state that intention clearly in the will, Succession of Acy, 97-0661 (La.App. 1 Cir. 4/8/98), 711 So.2d 341.
Second, factual issues ' • ‘©f Henderson’s intent preclude summary judgment. Courts may look to extrinsic evidence to clarify ambiguity in a Rwill, Succession of Hackney, 97-859 (La.App. 3 Cir. 2/4/98), 707 So.2d 1302, writ denied, 98-0596 (La.4/24/98), 717 So.2d 1172. Henderson’s third will draft, October 6, 2009, expressly created a trust; the attorney’s affidavit stated that Henderson “rejected institutional trusts”; then, the executed will, of November 11, 2010, deferred the actual mechanics of the gift to the executor. The plaintiffs argue that this chain of events creates a factual issue whether Henderson still wanted to create a trust by the time he executed the will. They also suggest that the “conditions of the alleged trust are extremely onerous,” requiring a recipient to exhaust all other avenues of financial aid before becoming eligible for the Henderson Academic Scholarship Fund.
Third, the bequest itself is insufficient to create a valid trust. They reiterate that the will does not actually establish a testamentary trust, .as it names no trustee but only an executor. They argue that Oroszy v. Burkard, supra, does not control, as the will in that case voiced the “wish and hope * * * that this will form a trust fund which is to be loaned for worthy girls and boys with nominal interest who wish to go to college.” They contend that Henderson’s will contains no such “mandatory and dispositive” language.
Fourth, an executor lacks legal authority to create a trust for the testator. In support, the plaintiffs cite La. C.C. art. 1572: “Testamentary dispositions committed to the choice of a.third person are null, except as expressly provided by law.” They concede that the second paragraph of Art. 1572 permits the testator to “delegate to his executor the authority to allocate a legacy to one or more entities or trustees or trusts organized for [ 7educational * * * purposes[,]” but urge that Henderson’s will goes way beyond this, purporting to direct the executor to establish an entity to *14 manage the funds. Further, the executor may not “establish the recipient of the bequest and then allocate funds to that recipient,” citing Succession of Wallis, 203 La. 874, 14 So.2d 749 (1943), and Fink v. Fink, supra.

Applicable Law

The fundamental rule of interpreting wills is La. C.C. art. 1611, which states in pertinent part: “The intent of the testator controls the interpretation of his testament. If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its. spirit.” The intent of the testator is the “paramount consideration” in determining the provisions of a will. Succession of Williams, 608 So.2d 973 (La.1992); Succession of Davis, 35,217 (La.App. 2 Cir. 10/31/01), 799 So.2d 1194. The first and natural impression conveyed to the mind on reading the clause involved is entitled to great weight. Succession of La Barre, 179 La. 45, 153 So. 15 (1934); Succession of Davis, supra. Moreover, “A disposition should be interpreted in a sense in which it can have effect, rather than one in which it can have none.” La. C.C. art. 1612. The will must be read so as to lead to testacy, not intestacy. Succession of Thibodeaux, 238 La. 791, 116 So.2d 525 (1959); Successions of Johnson v. Williams, 387 So.2d 1378 (La.App. 2 Cir.1980). In other words, the will must be interpreted in a way that furthers,- rather than - frustrates, the testator’s lawfubintent. Succession of Waldron, 323 So.2d 434 (La.1975); Succession of King, 595 So.2d 805 (La.App. 2 Cir.), writ denied, 598 So.2d 357 (1992). In spite of |sthe policy of the law to “countenance and vindicate the wishes of deceased persons,” the courts also recognize that “legal formalities in the drawing up of wills must be scrupulously observed in all essential respects and with substantial precision.” Succession of Thibodeaux, supra; Succession of Barnett, 245 So.2d 418 (La.App. 2 Cir.1971).
A trust is the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another. La. R.S. 9:1731; Bridges v. Autozone Props., Inc., 2004-0814 (La.3/24/05), 900, So.2d 784; Grant v. Grant, 35,635 (La.App. 2 Cir. 2/27/02), 810 So.2d 1226. A disposition authorized by Louisiana’s Trust Code may be made-in trust even'though it would be a prohibited substitution if made free of trust. La. R.S, 9:1723; Crichton v. Gredler, 256 La. 156, 235 So.2d 411 (1970); Succession of Tatum, 347 So.2d 79 (La.App. 2 Cir.), writ ref'd, 350 So.2d 896 (1977). A settlor may dispose of property in trust to the same extent that he may dispose of that property free of trust. La. R.S. 9:1737; Crichton v. Gredler, supra.
No particular language is required to create a trust, but it must clearly appear that the creation of a trust is intended. La; R.S. 9:1753; Succession of McLean, 580 So.2d 935 (La.App. 2 Cir.), writ denied, 584 So.2d 682 (1991). A trust instrument shall be given an interpretation that will sustain the effectiveness of its provisions if the instrument is susceptible of such an interpretation. R.S. 9:1753; Crichton v. Gredler, supra. It suffices if the instrument as a whole reflects the intent to establish a trust. St. Charles Land Trust v. St. Amant, 253 La. 243, 217 So.2d 385 (1968); see also Succession of Baker, supra,
A motion for’ summary judgment is a procedural device used when there is no genuine issue of material fact for all or part óf the relief sought by a litigant. La. C.C.P. art. 966 A; Duncan v. USAA Ins. Co., 2006-0363 (La.11/29/06), 950 So.2d 544. A summary judgment is reviewed de novo, with the, appellate court using the same criteria that guided the trial court in *15 determining whether summary judgment was appropriate: whether there is-"any genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966' A; Reynolds v. Bordelon, 2014-2371 (La.6/30/15), 172 So.3d 607.

Discussion

The plaintiffs have never contended that Henderson’s will was invalid for lack of form, and they have abandoned the earlier contention that he lacked the testamentary capacity to execute a will. The only issue is whether the content of the will can be interpreted to give effect to Henderson’s wishes. On de novo review, we find that it can.
In general, the‘plaintiffs are attempting to subject the content of the will to the level of scrutiny that is normally applied to analyze the formal requisites of a will. The courts have rejected this approach, adopting one that furthers, rather than frustrates, the testator’s intent. Succssion of Thibodeaux, supra; Succession of Barnett, supra.
Under R.S. 9:1731, the requirements for forming a trust are (1) a transfer of property from one person to another, (2) to be administered by the latter as a fiduciary and (3) for the benefit of another. Henderson’s will 1 ^explicitly transferred property (“give, devise and bequeath the sum of $1,450,000”) to be administered by the executor (“I direct my executor to take such steps * * * to see that the Henderson Academic Scholarship Fund is legally established in the form of a trust”) for the benefit of another (“these academic scholarships are available to any of my family members”). Simply put, every essential element for the'creation of a trust is present.'
The plaintiffs’ first issue, that the will states no intent to .create' a trust, is belied by the plain language of the will. Admittedly,' it could have been more explicit in establishing .a trust, instead .of a “trust, endowment, or other entity,” but a “first and natural impression” on reading this provision is that the testator wanted to create a trust. Succession of La Barre, supra; Succession of Davis, supra. To interpret the will’s broad language as negating the' creation of a trust would be a strained reading that would frustrate, rather than further, Henderson’s intent. Succession of Waldron, supra; Succession of King, supra.
The plaintiffs’ third issue, , that the bequest' itself is insufficient to create a valid trust because it fails to name a trustee, is equally unavailing. Again, the will might have been more explicit in designating Tucker as trustee of the trust. However, á fair reading of the bequest is that Henderson intended Tucker to manage the money. In Oroszy v. Burkard, supra, the will designated the Bank of Commerce as executor and stated, “My wish and hope is that this will form a trust fund which is to be loaned for worthy girls and boys” to attend college. The court found that although the will did not explicitly name Bank of Commerce as trustee, this did not defeat the |ncreation of the testamentary trust. The early case of- Fink v. Fink, supra, reached an opposite result, striking á provision of the will that authorized the executor “to' name and appoint three worthy and responsible persons as trustees” of an asylum for widows and orphans created by the will. ' We must -note that Fink predated the Louisiana Trust Code by over a century, and could not have anticipated that § 1723 would approve prohibited substitutions if they are made in trust. See Succession of Baker, supra. In light of Henderson’s intent to establish a trust and to give the executor power to “take such steps” as needed to see that the fund *16 is legally established as a trust, we find that the will sufficiently named a trustee.
The plaintiffs’ fourth issue, that an executor lacks legal authority to create a trust for the testator, relies on La. C.C. art. 1572. The second paragraph of Art. 1572, however, provides an exception:
The testator may expressly delegate to his executor the authority to allocate a legacy to one or more entities or trustees of trusts organized for educational, charitable, or other philanthropic purposes. The entities or trusts may be designated by the testator or, when authorized to do so, by the executor in his discretion. In addition, the testator may expressly delegate to his executor the authority to impose conditions bn those legacies.
This article permits the testator not only to leave a bequest to a specified charity and delegate authority to the executor to select what assets go to the charity, but also to delegate authority to. the executor to allocate among charities and select the charities. On this basis,-we find no prohibited substitution. Even if such were present, § 1723 authorizes prohibited substitutions in the mechanism of the trust. Crichton v. Gredler, supra; Succession of Tatum, supra.
112These three alleged issues do not defeat the executor’s showing that the will created a valid testamentary trust and that the executor is entitled to judgment as a matter of law.
The plaintiffs’ second issue is that ambiguity in the will requires the use of extrinsic evidence, Succession of Hackney, supra, a process for which summary judgment is not suited. Of course, this court’s de novo findings negate the claim that the will was too ambiguous to create a testamentary trust. We recognize that Henderson considered, and declined to execute, four prior will drafts, including one that specifically created a trust at La. Tech, .and that his attorney stated that Henderson “rejected institutional trusts.” The will he ultimately executed revoked “any and all former Wills and Codicils to Wills heretofore made by me, and all other and previous acts of testamentary disposition.” This statement is also sufficient to dismiss prior will drafts. The fact that the-testator may have considered alternative dispositions does not cast dbubt on the ultimate will. This alleged issue does not create a genuine issue of material fact.

Conclusion

For the reasons expressed, the summary judgment is affirmed. All costs are to be paid by the plaintiffs, Dale Allen Thomas, et al.
AFFIRMED.

. In the will, "Academic” is consistently misspelled as “Acadmic.”

. The plaintiffs implicitly abandoned the claim that Henderson lacked testamentary capacity.