SUCCESSION OF ALBERT E.
PITTMAN

    \*        NO. 2019-CA-0683

    \*

            COURT OF APPEAL

    \*

            FOURTH CIRCUIT

    \*

            STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2000-11819, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
\* \* \* \* \* \*
**JUDGE SANDRA CABRINA JENKINS**
\* \* \* \* \* \*

(Court composed of Judge Edwin A. Lombard, Judge Joy Cossich Lobrano, Judge
Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Dale N. Atkins)

**LOBRANO, J., CONCURS IN THE RESULT**
**LEDET, J., DISSENTS WITH REASONS**
**ATKINS, J., DISSENTS FOR THE REASONS ASSIGNED BY J. LEDET**

Brett M. Dupuy
Rebecca S. Miller
MIDDLEBERG RIDDLE GROUP
909 Poydras Street, Suite 1400
New Orleans, LA 70112

      COUNSEL FOR PLAINTIFF/APPELLANT


Michael R.C. Riess
Christy R. Bergeron
RIESS LEMIEUX, LLC
1100 Poydras Street, Suite 1100
New Orleans, LA 70163

      COUNSEL FOR DEFENDANT/APPELLEE


                  **AFFIRMED**

**JULY 1, 2020**

This appeal arises from a dispute over the management of a testamentary trust ("the Trust"), created upon the death of Albert E. Pittman in 2000. In the Trust, Mr. Pittman designated his wife, Gloria, as Trustee and income beneficiary, and named his four children as equal principal beneficiaries. In 2017, a representative of one of four principal beneficiaries, Lisa Montgomery ("Montgomery"), filed a Rule to Remove Trustee and for Restitution of Funds. In response, Gloria, as Trustee, filed a motion for summary judgment seeking the dismissal of the Rule to Remove. Montgomery now appeals the trial court's judgment granting the motion for summary judgment filed by Gloria and dismissing the Rule to Remove. Based on our *de novo* review of the motion for summary judgment, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1974, Albert Pittman and Gloria Pittman were married. At that time, they each had two children from prior marriages—Albert's children were Sandra

1

(Sandy) Pittman and Chris Pittman; Gloria's children were Donna Pittman Velez and Cynthia Pittman Rodriguez.

In July 2000, Albert died testate, with his will providing for specific bequests of assets to Gloria and his children and creating the Trust with the remaining assets. Albert designated Gloria the Trustee and income beneficiary of the Trust, which was divided into Portions A and B for federal tax purposes,[1] and named his four children as equal principal beneficiaries of the Trust. As the income beneficiary, Gloria was entitled to the income interest upon the entire corpus of the Trust for her lifetime. Upon Gloria's death, the Trust terminates and the children receive equal distributions of the corpus of the Trust. As to the administration of the Trust during Gloria's lifetime, the will states as follows:

> (13) I suggest Gloria, as trustee, to make monthly payments, first out of income from the invested funds, then, if necessary, out of the principal of these invested funds, and finally, from my interest in the corporation named in paragraph 10, as follows: (a) $4,000.00 to Gloria until her death. **Gloria shall have the right to invade the corpus balance if, when and to the extent necessary to maintain her present standard of living and well-being, and maintenance of her home.** Upon and after Gloria's death, I suggest my co-trustees to make monthly payments in the same order of such funds of $4,000.00 each to Chris, Sandy, Cindy, and Donna, until their deaths or total depletion of all property and funds in my estate.

Shortly after Albert's death, in August 2000, the co-executrixes of his succession—Gloria and his daughter, Sandra—filed a "Petition to Probate Will and Qualify Co-Executrixes" in Orleans Parish Civil District Court, opening the Succession. In September 2002, the co-executrixes obtained a judgment of

---

[1] The Trust was created as a Qualified Terminable Interest Property trust, aka the Schedule M, Q-TIP election, which allows a testator's estate to pass to the surviving spouse without estate taxation; and the property becomes taxable upon the death of the surviving spouse.

possession. Among the assets included in the estate were two notes payable to the testator, Albert, by his daughter, Sandy.

In April 2003, Sandy executed a promissory note in the amount of $193,160.23, payable to Albert's estate and Gloria, representing and replacing the two pre-death notes. In 2008, Gloria, individually and on behalf of the estate, filed suit against Sandra to collect on the promissory note. Following multiple years of litigation, including a judgment in favor of the estate and Gloria,[2] a settlement was reached. As part of the settlement, in June 2015, Sandy renounced her interest in her father's estate.

In 2006, Albert's son, Chris, died testate, leaving a surviving spouse, Montgomery, and four adult children—Jonathan, Rachel, Christopher, and Jaime—from previous marriages. In his will, Chris named Montgomery as the executrix of his estate.

From December 2008 to February 2013, Montgomery, a licensed Louisiana attorney, was employed as an associate at the law firm of Kingsmill Riess, L.L.C., now know as Riess LeMieux, L.L.C. (the "Riess Firm"). During Montgomery's tenure there, Gloria retained the Reiss Firm to represent Albert's estate and herself in the lawsuit filed against Sandy. However, Montgomery was not a named attorney representing the estate or the Trustee in the litigation against Sandra.

In 2016, the instant dispute arose between Montgomery and Gloria, who began to withdraw $7,000 per month from the Trust to make $1000 monthly gifts

_____

[2] *Estate of Pittman v. Pittman*, 10-1761 (La. App. 4 Cir. 7/6/11), 69 So.3d 1254.

to Donna, Cynthia, Montgomery, and each of Chris's four children. Gloria made the same withdrawal and distributions for thirteen months, totally $91,000.00 in distributions.

In February 2017, Montgomery, as the executrix and representative of Chris's estate, filed a "Rule to Show Cause for Accounting of Trusts and Other Relief" in this (Albert's) succession case. Montgomery asserted that she had requested accountings and additional information regarding the trust assets and administration of the Trust, but that the responses to her requests were "generally delayed" and the accounting information was "unclear" and "incomplete." In response to Montgomery's rule to show cause, Gloria filed an opposition asserting that she has complied with all requests for accounting, having Greg Rodriguez, Albert and Gloria's son-in-law and a certified public accountant, provide the responses to Montgomery's requests for accountings through Montgomery's attorneys, who sent the written requests. Following a hearing on the rule for accounting, the trial court's May 3, 2017 judgement ordered Gloria to submit the annual accounting for 2016 to all beneficiaries of the Trust, including Montgomery; to provide electronic copies of the monthly statements for the Trust for 2013 through 2016 to Montgomery; and, going forward, to provide electronic copies of the monthly statements for the Trust to Montgomery.

In November 2017, Montgomery, on behalf of Chris's estate, filed the Rule to Remove Trustee and for Restitution of Funds in this succession case. Montgomery asserted that Gloria had disregarded the plain language of the Trust

by invading the corpus of the Trust and breached her fiduciary duties as Trustee to a principal beneficiary of the Trust, Chris's succession.[3] Montgomery sought an order declaring that Gloria had breached her fiduciary duties to Chris's succession, that Gloria be removed as Trustee and replaced with a third party trustee, and that Gloria be required to pay restitution for sums paid out of the Trust and to pay other damages.

In August 2018, Gloria filed a motion for summary judgment seeking dismissal of the Rule to Remove filed by Montgomery. Gloria argued summary judgment was warranted on three grounds: (1) the clear wording of Albert's will allows for Gloria to expend the Trust fund as she desires; (2) Montgomery is equitably estopped from challenging whether the clear wording of the will allows Gloria to expend the Trust funds; and (3) Montgomery is judicially estopped from making the challenge.

On November 2, 2018, the trial court held a hearing, at the conclusion of which the trial court granted the motion for summary judgment in favor of Gloria. The trial court's December 3, 2018 judgment granted Gloria's motion for summary judgment, and dismissed Montgomery's Rule to Remove Trustee and for Restitution of Funds. Montgomery then filed a timely motion for new trial, which the trial court denied after a hearing.

---

[3] According to Montgomery, the only assets of Chris's estate are his interest in the Trust and a 25% interest in Albert's family home, of which Gloria was bequeathed a 50% interest and usufruct for her lifetime and in which she resides.

Montgomery now appeals the trial court's December 3, 2018 judgment granting the motion for summary judgment in favor of Gloria and dismissing the Rule to Remove Trustee and for Restitution of Funds.

## DISCUSSION

### Standard of Review

Appellate courts review a trial court's ruling on a motion for summary judgment under a *de novo* standard of review, using the same criteria applied by the trial court in determining whether summary judgment is appropriate. *Smith v. State*, 18-0197, p. 3 (La. App. 4 Cir. 1/19/19), 262 So.3d 977, 980. Thus, the appellate court applies the summary judgment standard for granting summary judgment set forth in La. C.C.P. art. 966(A)(3), as follows: "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documentation show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." The appellate court is not required to analyze the facts and evidence with deference to the judgment of the trial court or its reasons for judgment but looks at the record anew to make an independent determination regarding whether there are genuine issues of material fact that would preclude granting summary judgment. *Smith*, 18-0197, p. 3, 262 So.3d at 980.

### Burden of Proof

"[I]n reviewing summary judgments, we remain mindful of which party bears the burden of proof." *Orleans Parish Sch. Bd. v. Lexington Ins. Co.*, 12-

0095, p. 6 (La. App. 4 Cir. 8/28/13), 123 So.3d 787, 790. "Although the burden of proof on a motion for summary judgment remains with the moving party, the mover's burden changes depending upon whether he or she will bear the burden of proof at trial on the matter that is the subject of the motion for summary judgment." *Id*. As set forth in La. C.C.P. art. 966(D)(1), when the mover will not bear the burden of proof at trial on the issue that is before the court on summary judgment, then, "the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more essential elements to the adverse party's claim, action, or defense." For the adverse party to the motion, the burden is then "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1).

In support or opposition of the motion for summary judgment, the only documents that may be filed are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). Any affidavits filed in support or opposition must be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). In addition, "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." *Id*.

7

When a motion for summary judgment is made and supported as provided for by law, the adverse party may not rest on the allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Jones v. Estate of Santiago*, 03-1424, p. 6 (La. 4/14/04), 870 So.2d 1002, 1007.

**Motion for Summary Judgment on the Rule to Remove Trustee**

Gloria's motion for summary judgment sought the dismissal of Montgomery's Rule to Remove Trustee and for Restitution of Funds, arguing that there were no material issues of fact to litigate and she was entitled to judgment as a matter of law. Gloria's motion asserts that the clear language of Albert's will allows for Gloria, as Trustee, to expend the Trust funds as she sees fit. Moreover, Gloria argues that Montgomery is estopped—equitably and judicially—from arguing to the contrary, because Montgomery communicated that position previously and repeatedly to Gloria, as reflected in Montgomery's own writings in full support of Gloria's right to expend the Trust as she saw fit. Thus, Gloria argues that Montgomery is unable to carry her burden to show sufficient cause for the removal of Gloria as Trustee.

In consideration that Gloria's burden on the motion for summary judgment is to point out the absence of factual support for one or more elements essential to Montgomery's Rule to Remove Gloria as Trustee, we turn briefly to review the necessary allegations and proof for the removal of a trustee.

8

The removal of a trustee is governed by La. R.S. 9:1789, which states in pertinent part, "[a] trustee shall be removed in accordance with the provisions of the trust instrument or by the proper court for sufficient cause." As interpreted by Louisiana jurisprudence, "[t]hat statute contemplates more than a mere technical violation of the Trust Code as grounds for removal of a trustee." *Martin v. Martin*, 95-0466, p. 4 (La. App. 4 Cir. 10/26/95), 663 So.2d 519, 521 (citing *Curtis v. Breaux*, 458 So.2d 582 (La. App. 3rd Cir. 1984)). Sufficient cause for the removal of a trustee requires allegations of conflict of interest, hostility, and impairment or interference with proper administration of the trust. *McCaffery v. Lindner*, 18-163, p. 5 (La. App. 5 Cir. 12/27/18), 263 So.3d 1205, 1210. "Mere hostility or incompatibility between the trustee and a beneficiary is not sufficient grounds for removal; there must be factual allegations that the hostility interfered with or adversely affected the administration of the trust for it to be a reason for removal." *Fertel v. Brooks*, 02-0846, p. 10 (La. App. 4 Cir. 9/25/02), 832 So.2d 297, 304.

In this case, the Trust established in Albert's will does not include provisions for the removal of the Trustee. But Montgomery argues there is sufficient cause to remove Gloria as Trustee based on several alleged instances that Gloria improperly expended Trust assets to the detriment of the Trust's beneficiaries and in violation of the terms of the Trust.[4] As to the terms of the Trust violated, Montgomery

---

[4] The Rule to Remove filed by Montgomery alleges the following specific acts as violations of Gloria's duties to the Trust and the beneficiaries:
- Taking $91,000 from the Trust to make 13 monthly payments of $1000 each to Cindy, Donna, Montgomery, and Chris's four children.
- Discharging the $182,312.31 judgment in favor of Albert's estate in settling the litigation against Sandy.

points only to the following language in Albert's will: "Gloria shall have the right to invade the corpus balance if, when and to the extent necessary to maintain her present standard of living and well-being, and maintenance of her home." Montgomery asserts that this language clearly limits Gloria's right to invade the corpus/principal of the Trust and does not allow her an "unfettered" right to expend the Trust assets as she desires. Montgomery stands on this assertion as an essential element of her claim that Gloria has impaired or interfered with the proper administration of the Trust and should be removed for sufficient cause.

The exact language of the Trust cited by Montgomery is the same relied upon by Gloria to argue for the dismissal of the Rule to Remove in her motion for summary judgment. The cited language, found in paragraph 13 of Albert's will, is the only statement regarding Gloria's explicit right to use the Trust for its duration, i.e., Gloria's lifetime.[5] In her memorandum in support of summary judgment, Gloria contends that the family had discussed the terms of Albert's will and the Trust over the years since Albert's death in 2000, and that all family members, including Montgomery, agreed that the language allows Gloria the right to use the Trust funds however she saw fit. In addition, Gloria asserts that, from the time the

- Paying $159,057.34 to herself for the claims she, individually, held in the litigation against Sandy, which were settled and discharged.
- Taking $10,000 to pay Gloria's income taxes.
- Spending $13,000 on the lease of a Cadillac.
- Spending $17,900.94 on renovations to the family home.
- Failing to collect a $37,500 debt to the estate from her son-in-law, Greg Rodriguez, before it prescribed.
- Paying attorneys' fees from the Trust to pay for the litigation against Sandy and the instant litigation.

[5] Notably, the first sentence of that paragraph expresses Albert's "suggest[ion]s" that Gloria make $4,000 monthly payments to herself from the Trust, "if necessary, out of the principal", without any directive as to how to use those funds.

10

Trust was established in 2000 until 2016, Montgomery told Gloria repeatedly that the terms of Albert's will and the Trust provided Gloria with the right to use and expend the Trust assets as she saw fit. Based on the language of the Trust and her own reliance on Montgomery's previous statements and advices supporting Gloria's right to expend the Trust funds, Gloria argues that Montgomery is estopped from now arguing that Gloria's use of the Trust funds is cause for her removal as Trustee.

In support of her motion, Gloria introduced affidavits from, among others, herself and Christy Bergeron, an attorney with the Reiss Firm during the time Montgomery also worked there.[6] In her own affidavit, Gloria attests to the factual background information regarding the family, the promissory note due by Sandy to Albert's estate and Gloria, and the Sandy Pittman litigation that resulted in Sandy's renunciation of Albert's estate. Gloria also attests that during the time of the litigation, Montgomery worked at the Reiss Firm and recommended to Gloria that she retain the Reiss Firm to represent Gloria and the estate in the Sandy Pittman litigation. In addition, she attests to the following facts regarding her use of the Trust assets, her accountings, and Montgomery's awareness and advice to Gloria regarding the use of the Trust assets:

- In early 2016, I decided to distribute $7,000 of Trust assets each month to the principal beneficiaries of the Trust.

---

[6] Gloria also introduced affidavits from three of the four children of Chris Pittman. In each affidavit, Rachel, Jonathan, and Christopher attests to receiving $1,000 monthly checks from Gloria in 2016 and 2017; that each receives and reviews annual Trust accountings; that each do not have any issue with the distributions reflected in those accountings; and that each disagrees with Montgomery's filing of the Rule to Remove, her efforts to remove Gloria as Trustee, and the relief sought.

11

- I then gifted the $7,000, via $1,000 checks, to Donna Pittman Velez, Cynthia Pittman Rodriguez, and Montgomery.

- Chris Pittman's children, … also each received a $1,000 check from me.

- I submit annual Trust accountings to all of the Trust beneficiaries.

- Each distribution from the Trust is reflected in the Trust accountings and on the Morgan Stanley End of Year Statements.

- In late 2016, after I began distributing $7,000 of the Trust assets each year, Montgomery began requesting information and details regarding the Trust.

- Montgomery had not, before late 2016, questioned my use of the Trust assets.

- Montgomery repeatedly told me that I could use the Trust assets for whatever I wanted.

- Montgomery repeatedly told me that I could spend all of the Trust assets.

- Because Montgomery was an attorney, I relied on her advice about my right to use the Trust assets for whatever I wanted.

- Without Montgomery's advice regarding my right to spend the Trust funds, I would have conducted myself differently.

In Ms. Bergeron's affidavit, she attests to the following pertinent facts:

- [The Reiss Firm] is in possession of the entire file related to Albert E. Pittman and the disputes over his estate.

- On March 3, 2010, Montgomery edited an Opposition to Rule for an Accounting and for the Removal of Trustee filed by Sandra Pittman. A copy of the March 3, 2010 revisions is attached hereto as Exhibit "H." ["2010 Opposition"]

- In December 2009, Montgomery drafted a File Memo regarding the Pittman litigation. A copy of the December 2009 File Memo is attached hereto as Exhibit "L." ["2009 File Memo"]

- These records were made and kept in the course of regularly conducted business activity.

Ms. Bergeron further attests that the records attached to her affidavit met the requirements for the business records exception to the hearsay rule. *See* La. C.E. art. 803(6).[7]

The 2010 Opposition that Ms. Bergeron attests to being edited by Montgomery, was prepared in connection with the Sandy Pittman litigation, who at that time had filed a Rule for an Accounting and for Removal of Trustee [Gloria].[8] As highlighted in Gloria's motion for summary judgment, the 2010 Opposition reflects "tracking" or "redline" changes to the following statements:

- **What** ~~when~~ A.E. Pittman intended and specified in the trust instrument **is** that **his wife**, Gloria Pittman, could do ~~almost anything~~ **as** she w**ished, including**~~anted to do~~, items that could be considered wrongdoing in another type of trust ~~is unconscionable~~.

- The only **person**~~person~~ that **can be removed** ~~can be removed as the trustee~~ is **the trustee**, Gloria Pittman**; however, there is no legal or factual basis for her removal. These scurrilous allegations— without one shred of fact or evidence –warrant dismissal of the Rule**.

- Gloria Pittman was named the income beneficiary of Trust A and Trust B, with the four children as principal beneficiaries, and **she** was specifically given the right to invade the principal of Trust A and Trust B.

---

[7] La. C.E. art. 803(6) provides, in part, that "[a] memorandum . . . made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum . . . all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Ms. Bergeron attested that the records "were made and kept in the course of regularly conducted business activity"; "are ones that are routinely made and kept in the course of business, in the firm's usual practice"; "were made at or near the time of the event that it records"; and "were made by a person with knowledge or from information transmitted by a person with knowledge, and who reported such knowledge in the regular course of business."

[8] As noted *infra*, Montgomery does not dispute that she edited the document in March 2010 and, in her opposition, she attests to and attaches a correspondence between herself and Ms. Bergeron affirming that she did make changes to the 2010 Opposition.

13

In addition to the above edited statements, the 2010 Opposition contained the following statements without edits or comment:

- Further, the beneficiaries were aware that Gloria Pittman receives a distribution each month equal to the income generated on Trust A and Trust B; and, that Gloria Pittman can invade the principal as she wants, as per the express terms of the Trust Agreement, although she has not invaded the "principal" for years.

- Given that Gloria Pittman had unfettered authority to invade the principal of Trust A and Trust B and the trust records have always been open and available for review by any beneficiary, the annual accountings had less relevance than in a trust wherein the trustee had to preserve the principal.

The 2009 File Memo that Ms. Bergeron attests to being drafted by Montgomery, discusses "the family tree, the litigation, and the background leading up to" the Sandy Pittman litigation.[9] In providing family history, the following statement describes the Trust established in Albert's will:

- The Trust—Al's will made specific bequests, and left the remainder of his property to Gloria and the four children in trust. Gloria has usufruct of the trust, including the right to invade the principal.

Gloria argues that the two written records, which Ms. Bergeron authenticated and attests to being Montgomery's work, provide factual evidence that Montgomery knew of and promulgated the position that Albert's will clearly stated his intent that Gloria had the right to invade the principal and use the Trust assets as she saw fit. Further, she argues that Montgomery is precluded from now raising and arguing a completely contrary position as to the intent of Albert's will and Gloria's right to use the Trust under the doctrine of equitable estoppel.[10]

The doctrine of equitable estoppel is defined by the Louisiana Supreme Court as follows:

---

[9] As noted *infra*, Montgomery does not affirm or deny that she drafted the 2009 File Memo.
[10] Gloria also argues that Montgomery is judicially estopped from raising this position in her Rule to Remove. Upon review, however, we find the theory of judicial estoppel inapplicable; the record reflects no trial court judgment in the Sandy Pittman Litigation regarding Gloria's right to use the Trust or a finding on Albert's testamentary intent.

14

'[T]he effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct.' This Court has further held that the three elements required for application of equitable estoppel are: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance.

*Morris v. Friedman*, 94-2808, pp. 8-9 (La. 11/27/95), 663 So.2d 19, 25. (internal citations omitted).

Gloria contends that she has satisfied all three elements for the application of equitable estoppel: (1) Montgomery made a representation by conduct and work by editing the 2010 Opposition and drafting the 2009 File Memo in which both state repeatedly that Gloria has the right to invade the principal of the Trust, as intended and specified in Albert's will; (2) Gloria attested that she relied on Montgomery's conduct and repeated statements to her that Gloria had the right to use the Trust as she saw fit, and her reliance was justifiable given Montgomery's position as an attorney at the firm representing Gloria and Albert's estate and as a Trust beneficiary and family member; and (3) Gloria attested that she would have conducted herself differently if Montgomery had ever stated the contrary position she now asserts. Gloria thus argues that equitable estoppel applies here to preclude Montgomery from asserting the contrary position as the cause for her Rule to Remove Gloria as Trustee. In addition, based on the clear language of Albert's will and Trust, as supported by Montgomery in word and conduct for 16 years, Gloria argues that Montgomery will be unable to carry her burden of proof to show sufficient cause for her removal as Trustee, and, consequently, Gloria argues she is entitled to summary judgment as a matter of law and the dismissal of the Rule to Remove.

In opposing Gloria's motion, Montgomery argues that there are genuine issues of material fact that preclude summary judgment. She asserts that the language of Albert's will and the Trust is clear and unambiguous that Gloria does not have the unfettered right to invade the principal of the Trust. Moreover, she argues that a determination of Albert's intent in drafting the will is necessary to resolve the dispositive issue of whether Gloria has such a right, and that such determination is inappropriate for summary judgment. Montgomery also argues that the doctrine of equitable estoppel is inapplicable here and, thus, cannot serve as a basis for summary judgment.

In support of her opposition, Montgomery introduced her own affidavit with attachments, including an email correspondence between herself and Ms. Bergeron on March 3, 2010. In her affidavit, Montgomery addressed Gloria's affidavit by attesting that she never told Gloria that she could use the Trust assets for any purpose; never told Gloria she could spend all of the Trust assets; and never told Gloria that she could invade the corpus of the Trust. Montgomery further attests that she was employed at the Reiss Firm from December 2008 through February 2013, but she did not represent Albert's estate or Gloria in the Sandy Pittman Litigation. As to Ms. Bergeron's affidavit, Montgomery attests, in pertinent part, as follows:

- Concerning the March 3, 2010 pleading cited in … Christy Bergeron's affidavit, Exhibit H:

  o There were times the Sandra Pittman lawsuit when either Michael Reiss or Christy Bergeron would ask Affiant to check their work and facts for accuracy, particularly to familial relationships and/or events underlying the lawsuit filed by the Trustee against Sandra Pittman.

  o Affiant has no independent recollection of editing either memorandum attached as Exhibit H.

o There is an email [attached to Montgomery's affidavit] dated March 3, 2010 to Christy Bergeron from Affiant that states:

"I'm just fleshing out the relationships of [S]andy and the kids in[] the very beginning, adding quotes [from] the power of attorney to show it's limited to Al's succession & including it as an exhibit; and the other facts you asked about: when Al & Gloria were married, the fact that Sandy is a stepdaughter, etc. You can delete them all if you'd like .. Hope I'm not over stepping …"

o Pursuant to [email] above, it is possible that Michael Reiss or Christy Bergeron asked Affiant to check their work and facts for accuracy in the memoranda.

Notably, in her affidavit, Montgomery did not make any attestations regarding the 2009 File Memo, which Ms. Bergeron attests to being drafted by Montgomery. Montgomery's motion and affidavit do not affirm or deny that she edited the 2010 Opposition or drafted the 2009 File Memo. In addition, Montgomery's motion does not dispute the authenticity of the documents but objects to their relevance.

At the hearing on the motion for summary judgment, Montgomery's counsel argued that the conflicting affidavits raised issues of fact regarding the dispositive issue of Albert's intent in establishing the Trust, which cannot be decided on summary judgment. Gloria's counsel argued, however, that Montgomery's own writing belies the assertion of a dispute as to Albert's intent in establishing the Trust, and that Montgomery would be unable to prove her own cause for removal of Gloria as Trustee.

When questioned by the trial court whether Montgomery can dispute editing or authoring the 2010 Opposition or the 2009 File Memo or the contents therein, Montgomery's counsel argued that testimony is needed to determine context and that Montgomery stood in a different posture while working at the Reiss Firm than as she does as Chris's executrix. Gloria's counsel countered that Montgomery stands in the same position now as she did in 2009, as Chris's executrix

17

representing a Trust beneficiary; but, Montgomery is now raising the same argument to have Gloria removed as Trustee as raised by Sandy in that litigation, despite Montgomery's admitted acts of reviewing and editing the 2010 Opposition, which clearly states the position that Gloria has the unfettered right to use and invade the principal of the Trust. Following those final arguments, the trial court granted the motion for summary judgment in favor of Gloria.

On appeal, Montgomery's sole assignment of error argues that the trial court legally erred in granting summary judgment on the question of Albert's intent in drafting his will and establishing the Trust. Montgomery argues that a judicial interpretation of Albert's intent in writing his will and Trust is necessary to resolve the dispositive issue of whether Gloria has violated the terms of the Trust, and that such an interpretation of intent is inappropriate for summary judgment.

Generally, issues pertaining to subjective facts such as intent are usually not appropriate to a summary judgment determination, in consideration that a question of intent can involve weighing testimony and evaluating credibility. *Thomas v. Hodges*, 10-2637, p. 1 (La. 2/11/11), 54 So.3d 1109. However, as recognized by the Louisiana Supreme Court in *Jones*, "summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent." 02-1424, p. 6, 870 So.2d at 1006 (quoting *Smith v. Our Lady of the Lake Hospital, Inc.*, 93-25121 (La. 7/5/94), 639 So.2d 730, 751).

When the interpretation of a provision in a will is a dispositive issue, the fundamental rule, as set forth by La. C.C. art. 1611, states: "[t]he intent of the testator controls the interpretation of the will. If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit." Courts have found it permissible, however, to "look to extrinsic evidence to clarify

18

ambiguity in a will." *Succession of Henderson*, 50,475, pp. 5-6 (La. App. 2 Cir. 2/24/16), 191 So.3d 9, 13.

In this case, the trial court did not provide oral or written reasons for granting the summary judgment in favor of Gloria. However, from a review of the hearing on the motion, the trial court considered the evidence in terms of whether there was an expressed unified position on Albert's intent and Gloria's use of the Trust assets. In granting the summary judgment, the trial court determined that there were no genuine issues of material fact to litigate as to the Rule for Removal and that Gloria was entitled to a judgment dismissing the Rule for Removal as a matter of law.

Based on our *de novo* review of the motion for summary judgment, we find that Gloria carried her burden of proof to show an absence of factual support for the elements necessary to Montgomery's action for removal of Gloria as Trustee, and that Montgomery failed to produce factual support sufficient to establish a genuine issue of material fact as to a cause for removal of Gloria as Trustee. Gloria has put forth undisputed evidence that Montgomery previously, until the filing of the Rule to Remove, knew and approved of the position—held by Gloria as Trustee and representative of the estate—that Gloria had the right to expend the Trust funds as she saw fit and the right to invade the principal for any reason. Montgomery has not attested or offered any evidence to show that she can rebut that prior position. By her own affidavit and the attached email correspondence with Ms. Bergeron, Montgomery admits to reviewing and editing documents "to check their work and facts for accuracy" pertaining to the Sandy Pittman Litigation, in which the clearly, repeatedly stated legal position of Albert's estate

and Gloria was that Albert intended for Gloria to have unfettered use the of the Trust assets during her lifetime, including the right to invade the principal.

Finally, in consideration of the language of the will, we find no ambiguity in Albert's intent for Gloria to use the Trust assets as she saw fit during her lifetime. As noted previously in this opinion, paragraph 13 of Albert's will provides the only language offering "suggest[ion]s" for the use of the Trust as well as providing Gloria an explicit right of use. Albert's suggestion that Gloria make $4,000 monthly payments to herself from the income interest and, if necessary, out of the principal does not provide any parameters on how such funds are to be used. And the key disputed statement that follows his suggestion of the $4,000 monthly payments allows for Gloria to have access to all Trust funds necessary "to maintain her present standard of living and **well-being**" (emphasis added). When combined with the documentary evidence introduced at the motion for summary judgment, we find no genuine issue of material fact to be litigated on the Rule for Removal.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment granting summary judgment in favor of Gloria and dismissing Montgomery's Rule for Removal and for Restitution of Funds.

**AFFIRMED**